**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| DOREEN GRUNDHOEFER<br><br>*Plaintiff,*<br><br>v.<br><br>NOVO NORDISK A/S and NOVO NORDISK INC.,<br>*Defendants.* | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

-------------------------------------------------------------------------------------------------------------------

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections and privileges, and obligations of that Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the District of Minnesota as Plaintiff's designated venue ("Original

Venue"). Plaintiff makes this selection based upon one (or more) of the following factors (check the appropriate box(es)):

X Plaintiff currently resides in Foreston, Minnesota.

X Plaintiff purchased and used Defendant(s)' products in Foreston, Minnesota and/or St. Cloud, Minnesota..

__ The Original Venue is a judicial district in which Defendant _____ resides, and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

X The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)): Plaintiff was diagnosed with a bowel obstruction in St. Cloud, Minnesota.

__ There is no district in which an action may otherwise be brought under 28 USC § 1391, and the Original Venue is a judicial district in which Defendant _____ is subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

__ Other reason (please explain): _____ .

Plaintiff, DOREEN GRUNDHOEFER, by Plaintiff's attorney, Parvin Aminolroaya of Seeger Weiss, LLP, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## **JURISDICTION AND VENUE**

1.      The Original Venue has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and

costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which Plaintiff resides, which is Minnesota.

2.    The Original Venue has personal jurisdiction over Defendants, consistent with the United States Constitution, Minn. Stat. Ann. § 543.19 (Minnesota's "long-arm" statute) as Plaintiff's claims arise out of Defendants' transaction of business and the tortious acts within the State of Minnesota, and by virtue of Defendants' substantial, continuous, and systematic contacts with the State of Minnesota unrelated to Plaintiff's claims.

## NATURE OF THE CASE

3.    This is an action for damages suffered by Plaintiff, Doreen Grundhoefer, who was severely injured as a result of Plaintiff's use of Ozempic, an injectable prescription medication that is used to control blood sugar in adults with type 2 diabetes, and Wegovy, an injectable prescription medication that is used for chronic weight management in adults with an initial Body Mass index (BMI) of 30 kg/m$^2$ or greater, or with a BMI of 27 kg/m$^2$ or greater and at least one weight-related comorbid condition.

4.    The active ingredient in Wegovy and Ozempic is known as semaglutide. Semaglutide works by stimulating insulin production and reducing glucose production in the liver helping to lower blood sugar levels.

5.    Semaglutide belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

6.    Defendants acknowledge that gastrointestinal events are well known side effects of the GLP-1RA class of drugs.[1] However, Defendants have downplayed the severity of the

---

[1] *See, e.g.*, CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (visited on 9/26/23).

gastrointestinal events caused by their GLP-1RAs, never, for example, warning of the risk of bowel obstructions.

7.      Bowel Obstruction or Intestinal Obstruction is a condition that occurs when the normal movement of digested food through the gastrointestinal tract is blocked. Bowel obstructions can cause symptoms including abdominal pain, nausea, vomiting, and constipation. Bowel obstructions can also lead to perforation of the intestines, infections, sepsis, and other complications, and can be life threatening.[2]

8.      Bowel obstruction can be caused by fecal impaction due to chronic constipation.[3]

## **PARTY PLAINTIFF**

9.      Plaintiff, Doreen Grundhoefer,, is a citizen of the United States, and is a resident of the State of Minnesota.

10.     Plaintiff is 61 years old.

11.     Plaintiff used Ozempic from on or about April of 2022 to on or about February of 2023.

12.     Plaintiff used Wegovy from on or about March of 2023 to on or about December of 2023.

13.     Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic and Wegovy that were used by Plaintiff.

---

[2] *Bowel Obstruction*, Cleveland Clinic (last updated September 25, 2023), available at https://my.clevelandclinic.org/health/diseases/bowel-obstruction  (visited on 4/17/2024).
[3] *See, e.g.*, Szemein Gan, et al., *A case of colonic obstruction combined with ischemic colitis*, 4(1) AGING MED. 58 (published online January 20, 2021), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7954835/ (visited on 4/18/2024).

14.    As a result of using Wegovy and Ozempic, Plaintiff was caused to suffer from a bowel obstruction and its sequelae, and as a result sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

15.    As a result of using Wegovy and Ozempic, Plaintiff was caused to suffer from a bowel obstruction and its sequelae, which resulted in, for example, abdominal pain, nausea, and vomiting. As a result of her bowel obstruction, Plaintiff was hospitalized for several days, and had to have a nasogastric tube placed.

## PARTY DEFENDANTS

16.    Defendant Novo Nordisk Inc. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

17.    Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

18.    Defendants Novo Nordisk Inc., and Novo Nordisk A/S, are referred to collectively herein as "Novo Nordisk."

19.    Novo Nordisk designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed Ozempic and Wegovy. Alternatively, Novo Nordisk has acquired the entity/entities who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Wegovy and is, thus, the successor to such entity/entities.

## FACTUAL BACKGROUND

A.    **FDA's Approval of Ozempic**

20.    On December 5, 2016, Novo Nordisk announced submission of a new drug application (NDA) to the FDA for regulatory approval of once-weekly injectable semaglutide, a

new glucagon-like peptide-1 (GLP-1) medication for treatment of type 2 diabetes. In the announcement, Novo Nordisk represented that in clinical trials "once-weekly semaglutide had a safe and well tolerated profile with the most common adverse event being nausea."[4]

21.    On December 5, 2016, Defendant Novo Nordisk Inc. submitted NDA 209637, requesting that the FDA grant it approval to market and sell Ozempic (semaglutide) 0.5 mg or 1 mg injection in the United States as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus. On December 5, 2017, the FDA approved NDA 209637.[5]

22.    On March 20, 2019, Defendant Novo Nordisk Inc. submitted supplemental new drug application (sNDA) 209637/S-003 for Ozempic (semaglutide) 0.5 mg or 1 mg injection, requesting approval to expand its marketing of Ozempic by adding an indication to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes and established cardiovascular disease.[6] On January 16, 2020, the FDA approved sNDA 209637/S-003.[7]

23.    On May 28, 2021, Defendant Novo Nordisk Inc. submitted sNDA 209637/S-009, requesting approval for a higher 2 mg dose of Ozempic (semaglutide) injection. On March 28, 2022, the FDA approved sNDA 209637/S-009.[8]

**B.    FDA's Approval of Wegovy**

---

[4] Novo Nordisk, *Novo Nordisk files for regulatory approval of once-weekly semaglutide in the US and EU for the treatment of type 2 diabetes* (Dec. 5, 2016), available at
https://ml.globenewswire.com/Resource/Download/d2f719e1-d69f-4918-ae7e-48fc6b731183 (visited on 9/26/23).
[5] FDA Approval Letter for NDA 209637 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2017/209637s000ltr.pdf (visited on 9/26/23).
[6] *Novo Nordisk files for US FDA approval of oral semaglutide for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes*, Cision PR Newswire (March 20, 2019), available at
https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html (visited on 9/26/23).
[7] FDA Supplement Approval Letter for NDA 209637/A-003 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/209637Orig1s003ltr.pdf (visited on 9/26/23).
[8] FDA Supplement Approval Letter for NDA 209637/S-009 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/209637Orig1s009ltr.pdf (visited on 9/26/23).

24.     On December 4, 2020, Defendant Novo Nordisk, Inc. submitted NDA 215256, requesting that the FDA grant it approval to market and sell Wegovy (semaglutide) injections in the United States as an adjunct to a reduced calorie diet and increased physical activity for chronic weight management in adults with an initial body mass index (BMI) of 30 kg/m2 or greater (obesity), or with a BMI of 27 kg/m2 or greater (overweight) and at least one weight-related comorbid condition (e.g. hypertension, type 2 diabetes mellitus, or dyslipidemia. On June 4, 2021, the FDA approved NDA 215256.[9]

25.     On June 29, 2022, Defendant Novo Nordisk, Inc. submitted sNDA 215256/S-005, requesting that the FDA grant it approval to add the following indication to the Prescribing Information and Medication Guide for Wegovy (semaglutide) injections in the United States: "as an adjunct to a reduced calorie diet and increased physical activity for chronic weight management in pediatric patients aged 12 years and older with an initial BMI at the 95th percentile or greater standardized for age and sex (obesity)." On December 23, 2022, the FDA approved sNDA 215256/S—005.[10]

26.     On September 23, 2022, Defendant Novo Nordisk, Inc. submitted sNDA 215256/S-007, requesting that the FDA grant it approval to update the Prescribing Information and Medication Guide for Wegovy (semaglutide) injections in the United States to include Wegovy (semaglutide) 1.7 mg subcutaneous weekly as an additional maintenance dose for use as an adjunct to a reduced calorie diet and increased physical activity for chronic weight management in adults with an initial body mass index (BMI) of 30 kg/m2 or greater (obesity), or with a BMI of 27 kg/m2

---

[9] FDA Approval Letter for NDA 215256 (Wegovy), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2021/215256Orig1s000ltr.pdf (visited on 4/17/2024)

[10] FDA Supplement Approval Letter for NDA 215256/S-005 (Wegovy), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/215256Orig1s005ltr.pdf (visited on 4/17/2024).

or greater (overweight) and at least one weight-related comorbid condition. On July 21, 2023, the FDA approved sNDA 215256/S—007.[11]

27.    On September 8, 2023, Defendant Novo Nordisk, Inc. submitted sNDA 215256/S-011, requesting that the FDA grant it approval to add the following indication to the Prescribing Information and Medication Guide for Wegovy (semaglutide) injections in the United States: "Wegovy is indicated in combination with a reduced calorie diet and increased physical activity to reduce the risk of major adverse cardiovascular events (cardiovascular death, non-fatal myocardial infarction, or non-fatal stroke) in adults with established cardiovascular disease and either obesity or overweight." On March 8, 2024, the FDA approved sNDA 215256/S—011.[12]

**C.    Novo Nordisk's Marketing and Promotion of Ozempic and Wegovy**

28.    On December 5, 2017, Novo Nordisk announced the FDA's approval of Ozempic (semaglutide) 0.5 mg or 1 mg injection in a press release stating that: "Novo Nordisk expects to launch OZEMPIC® in the U.S. in Q1 2018, with a goal of ensuring broad insurance coverage and patient access to the product. OZEMPIC® will be priced at parity to current market-leading weekly GLP-1RAs and will be offered with a savings card program to reduce co-pays for eligible commercially-insured patients. Additionally, as part of the access strategy, Novo Nordisk is working with appropriate health insurance providers to establish innovative contracting solutions."[13]

---

[11] FDA Supplement Approval Letter for NDA 215256/S-007 (Wegovy), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2023/215256Orig1s007ltr.pdf (visited on 4/17/2024).
[12] FDA Supplement Approval Letter for NDA 215256/S-011 (Wegovy), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2024/215256Orig1s011ltr.pdf (visited on 4/17/2024).
[13] *Novo Nordisk Receives FDA Approval of OZEMPIC® (semaglutide) Injection For the Treatment of Adults with Type 2 Diabetes*, Cision PR Newswire (December 05, 2017), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-ozempic-semaglutide-injection-for-the-treatment-of-adults-with-type-2-diabetes-300567052.html (visited on 9/26/23).

29.     On February 5, 2018, Novo Nordisk announced that it had started selling Ozempic in the United States and touted the medication as a "new treatment option[]" that "addresses the concerns and needs of people with diabetes[.]" Novo Nordisk offered an "Instant Savings Card to reduce co-pays to as low as $25 per prescription fill for up to two years."[14]

30.     Novo Nordisk promoted the safety and sale of Ozempic in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, and through other public outlets.

31.     On July 30, 2018, Novo Nordisk launched its first television ad for Ozempic, to the tune of the 1970s hit pop song "Magic" by Pilot, wherein Novo Nordisk advertised that "adults lost on average up to 12 pounds" when taking Ozempic, even though it is not indicated for weight loss.[15]

32.     On March 28, 2022, Novo Nordisk announced the FDA's approval of sNDA 209637/S-009 for a higher 2 mg dose of Ozempic (semaglutide) injection. In the press release, Novo Nordisk represented Ozempic as having "proven safety" and advertised that "plus it can help many patients lose some weight."[16]

---

[14] *Novo Nordisk Launches Ozempic® and Fiasp®, Expanding Treatment Options for Adults with Diabetes*, Cision PR Newswire (February 05, 2018), available at https://www.prnewswire.com/news-releases/novo-nordisk-launches-ozempic-and-fiasp-expanding-treatment-options-for-adults-with-diabetes-300592808.html (visited on 9/26/23).
[15] *Ozempic TV Spot, 'Oh!'*, iSpot.tv (July 30, 2018), available at https://www.ispot.tv/ad/d6Xz/ozempic-oh (visited on 9/26/23).
[16] *Novo Nordisk receives FDA approval of higher-dose Ozempic® 2 mg providing increased glycemic control for adults with type 2 diabetes*, Cision PR Newswire (March 28, 2022), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (visited on 10/16/23).

33.     Since 2018, Novo Nordisk has spent more than $884,000,000 on television ads in the United States to promote its semaglutide drugs (Ozempic, Wegovy and Rybelsus) with the majority of the spending allocated specifically to advertising Ozempic.[17]

34.     In 2022, Novo Nordisk spent $180.2 million on Ozempic ads, including an estimated $157 million on national television ads for Ozempic, making Ozempic the sixth most advertised drug that year. As a result of its GLP-1RA treatments, including Ozempic, Novo Nordisk forecasts sales growth of 13% to 19% for 2023.[18]

35.     On July 6, 2023, it was reported that Novo Nordisk had spent $11 million in 2022 on food and travel for doctors "as part of its push to promote Ozempic and other weight loss-inducing diabetes drugs."[19] The spending bought more than 457,000 meals for almost 12,000 doctors while also flying doctors to places like London, Paris, Orlando, and Honolulu.[20]

36.     In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.[21]

---

[17] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (April 26, 2023), available at https://medwatch.com/News/Pharma___Biotech/article15680727.ece (visited on 9/26/23).

[18] Adams B, Fierce Pharma, *The top 10 pharma drug ad spenders for 2022*, https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022 (visited on 9/26/23).

[19] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (visited on 9/26/23).

[20] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (visited on 9/26/23).

[21] Erin Prater, *Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust,* Fortune Well (July 21, 2023), available at https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (visited on 9/26/23);

37.     As a result of Novo Nordisk's advertising and promotion efforts, Ozempic has been widely used throughout the United States. The number of prescriptions filled reached an all-time high of 373,000 in one week in February of 2023, with more than half of those being new prescriptions.[22] In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.[23]

38.     On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022,[24] and currently has over 1.3 billion views.[25]

39.     On June 15, 2023, NBC News published a report about the "thousands of weight-loss ads on social media for the drugs Ozempic and Wegovy." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, Novo Nordisk was still running online social-media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.[26]

40.     On July 10, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S. culture and industry."[27]

---

see also Erin Prater, *Weight-loss drugs like Ozempic and Wegovy may put certain people at risk of serious complications, researchers warn*, Fortune Well (March 7, 2023), available at https://fortune.com/well/2023/03/07/ozempic-wegovy-elevated-risk-intestinal-obstruction-later-type-2-diabetes-weight-loss-drug/ (visited on 10/18/23).

[22] Choi A, Vu H, *Ozempic prescriptions can be easy to get online. Its popularity for weight loss is hurting those who need it most*, CNN (March 17, 2023), available at https://www.cnn.com/2023/03/17/health/ozempic-shortage-tiktok-telehealth/ (visited on 9/26/23).

[23] Gilbert D, *Insurers clamping down on doctors who prescribe Ozempic for weight loss*, The Washington Post (June 12, 2023), available at https://www.washingtonpost.com/business/2023/06/11/weight-loss-ozempic-wegovy-insurance/ (visited on 9/26/23).

[24] Blum D, *What is Ozempic and Why Is It Getting So Much Attention?*, The New York Times (published Nov. 22, 2022, updated July 24, 2023), available at https://www.nytimes.com/2022/11/22/well/ozempic-diabetes-weight-loss.html (visited on 9/26/23).

[25] https://www.tiktok.com/tag/ozempic (visited on 11/14/23).

[26] Ingram D, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), available at https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutide-rcna88602 (visited on 9/26/23).

[27] Bain P, *Ozempic was 2023's Buzziest Drug*, AdAge (July 10, 2023), available at https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571 (visited on 9/26/23).

41.     GLP-1RA drugs, including Ozempic and Wegovy, have also been promoted by influencers on social media and other online platforms. This form of advertising often does not adequately convey the risks and potential side effects of these medications.[28]

42.     At all relevant times, Novo Nordisk was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Ozempic and Wegovy.

## C.    The Medical Literature and FDA Adverse Event Reports Gave Defendants Notice of Bowel Obstruction Being Causally Associated with GLP-1RAs.

43.     As previously noted, Ozempic (semaglutide) and Wegovy (semaglutide) belong to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

44.     Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.[29]

45.     Because the risk of bowel obstruction is common to the entire class of drugs, any published literature regarding the association between bowel obstruction and *any* GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of bowel obstruction associated with these drugs.

---

[28] Peter Loftus & Sara Ashley O'Brien, *Influencers Love Ozempic—but They Aren't Telling You About the Risks*, Wall Street Journal (published online April 19, 2024), available at https://www.wsj.com/health/pharma/ozempic-weight-loss-drug-side-effects-social-media-influencers-66f73ac0 (visited 4/22/2024). *See also* Alex Bitter and Sindhu Sundar, *Ozempic is now a Hollywood punchline. See how doctors and clinics are using TikTok to sell trendy weight-loss injections*, Business Insider, (published online March 13, 2023), available at https://www.businessinsider.com/semaglutide-weight-loss-videos-flood-tiktok-instagram-discuss-ozempic-wegovy-2023-2 (visited 4/22/2024); Shane O'Neill, *New marketing push by Ozempic and others sparks body-positive backlash*, The Washington Post (published online February 14, 2024), available at https://www.washingtonpost.com/style/of-interest/2024/02/14/ozempic-body-positivity-influencers-weight-loss-drugs/ (visited 4/22/2024); Melissa Davey, *TGA investigates influencers after diabetes drug Ozempic promoted as weight-loss treatment*, The Guardian (published online January 5, 2023), available at https://www.theguardian.com/australia-news/2023/jan/06/tga-investigates-influencers-after-diabetes-drug-ozempic-promoted-as-weight-loss-treatment (visited 4/22/2024).
[29] Hinnen D, *Glucagon-Like Peptide 1 Receptor Agonists for Type 2 Diabetes*, 30(3) Diabetes Spectr., 202–210 (August 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5556578/ (visited on 9/26/23).

46.    Defendants knew or should have known of this risk of bowel obstruction from the clinical trials, medical literature, and case reports.

47.    A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascular outcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide group than in the placebo group, including serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and diarrhea.[30]

48.    A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[31]

49.    Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[32]

50.    In a September 2020 article funded and reviewed by Novo Nordisk, scientists affiliated with Novo Nordisk reported on two global clinical trials that evaluated the effect of semaglutide in patients with cardiovascular events and diabetes. More patients permanently

---

[30] Marso, SP, et al., Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes, N. Eng. J. Med. 375:1834-1844 (November 2016), available at https://www.nejm.org/doi/10.1056/NEJMoa1607141 (visited on 10/19/23).

[31] Nakatani Y et al., *Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy*, 43(5) Diabetes & Metabolism, 430-37 (October 2017), available at https://www.sciencedirect.com/science/article/pii/S1262363617301076 (visited on 9/26/23).

[32] Sikirica M et al., *Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes*, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/

discontinued taking oral semaglutide (11.6%) than placebo (6.5%) due to adverse events. The most common adverse events associated with semaglutide were nausea (2.9% with semaglutide versus 0.5% with placebo), vomiting (1.5% with semaglutide versus 0.3% with placebo), and diarrhea (1.4% with semaglutide versus 0.4% with placebo). Injectable semaglutide had a discontinuation rate of 11.5-14.5% (versus 5.7-7.6% with placebo) over a two-year period. The authors acknowledged the potential for severe gastrointestinal events, warning that "[f]or patients reporting severe adverse gastrointestinal reactions, it is advised to monitor renal function when initiating or escalating doses of oral semaglutide." For patients with other comorbidities, the study warned that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs." The study further identified as one "key clinical take-home point" that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs."[33]

51.    A July 2021 article funded and reviewed by Novo Nordisk considered 23 randomized control trials conducted across the United States, Japan, and China and concluded that "gastrointestinal disturbances" were "well-known" side effects associated with semaglutide use. When compared with placebos, the subcutaneous (injection) form of the drug induced nausea in up to 20% of patients (versus up to 8% on the placebo group), vomiting in up to 11.5% of patients (versus up to 3% in the placebo group) and diarrhea in up to 11.3% of patients (versus up to 6% in the placebo group). Overall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for gastrointestinal related adverse events, with some trials experiencing 100% discontinuation due to gastrointestinal related adverse events. The mean value of gastrointestinal related adverse events that led to discontinuation averaged 57.75%. Semaglutide

---

[33] Mosenzon O, Miller EM, & Warren ML, *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine (2020), 132:sup2, 37-47, available at https://doi.org/10.1080/00325481.2020.1800286 (visited on 9/26/23).

appears to be associated with more frequent vomiting and nausea as compared to other GLP-1RAs. The study acknowledges that while nausea and vomiting are unwanted side effects, "they may be partly responsible for aspects of the drug's efficacy[.]"[34]

52.     A June 2022 study reported GLP-1RA Mounjaro (tirzepatide) adverse events of vomiting, nausea, and "severe or serious gastrointestinal events."[35]

53.     A January 2023 meta-analysis of GLP-1RA (Mounjaro) adverse events reported high rates of nausea and vomiting.[36]

54.     In February 2023, a longitudinal study of GLP-1RA (dulaglutide) reported adverse events for nausea and vomiting.[37]

55.     On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[38]

---

[34] Smits MM & Van Raalte DH (2021), *Safety of Semaglutide*, Front. Endocrinol., 07 July 2021, doi: 10.3389/fendo.2021.645563, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/ (visited on 9/26/23).
[35] Jastreboff, *Tirzepatide Once Weekly for the Treatment of Obesity*, N Engl J Med, at 214 (June 4, 2022) (https://doi.org/10.1056/nejmoa2206038).
[36] Mirsha, *Adverse Events Related to Tirzepatide*, J. of Endocrine Society (Jan. 26, 2023) (https://doi.org/10.1210%2Fjendso%2Fbvad016).
[37] Chin, *Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month postmarketing observational study*, J Diabetes Investig (Feb. 2023) (https://doi.org/10.1111%2Fjdi.13932).
[38] American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (visited on 9/26/23).

56.    In an October 5, 2023, Research Letter published in the Journal of the American Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction.[39] The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of intestinal obstruction and at 3.67 times higher risk of gastroparesis.

57.    An October 2023 article in the Journal of the Endocrine Society reported a case in which a patient taking liraglutide developed a transient intussusception, a condition in which "one segment of the bowel telescopes into the adjacent segment, potentially causing intestinal ischemia." The article also noted that "Small bowel obstruction (SBO), though not well described in clinical trials, has been reported in observational studies [of GLP-1RAs]."[40]

58.    The FDA's Adverse Events Reporting System (FAERS) shows over one hundred reports of intestinal obstruction reported in connection with use of GLP-1RAs and dozens of reports associated specifically with semaglutide. The earliest reported intestinal obstruction event associated with semaglutide was reported in 2019, and the earliest reported intestinal obstruction event associated with any GLP-1RA occurred in 2006.[41]

59.    A 2020 study of adverse reaction reports in VigiBase, the World Health Organization's adverse drug reactions (ADR) database, found that "intestinal obstructions were

---

[39] Mohit Sodhi, et al., *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), available at https://jamanetwork.com/journals/jama/fullarticle/2810542 (last visited 10/19/23).

[40] Sura Alqaisi, et al., *GLP-1RA Therapy And Intussusception: A Case Report Of Bowel Telescoping In An Obese Patient After Successful Weight Loss On Therapy*, 7 J. ENDOCR. SOC. Suppl. 1 (published online October 5, 2023), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10554870/ (visited 4/18/2024).

[41] The FAERS database is accessible online at https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard.

more than 4.5 times more frequently reported with incretin-based drugs than with other diabetes drugs (ROR 4.52, 95% CI: 3.87-5.28) with a higher signal for serious cases."[42]

60.     Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing bowel obstructions, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

## E.    Defendants Failed to Warn of the Risks of Bowel Obstructions from Ozempic and Wegovy

61.     The Prescribing Information for Ozempic and Wegovy (the "labels") discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of bowel obstructions and their sequelae.[43]

62.     The Ozempic and Wegovy labels list nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic and Wegovy patients, but they do not include these adverse reactions in its "Warnings and Precautions" section, nor do they warn that these adverse reactions may be symptoms of more severe conditions, including bowel obstruction. In fact, bowel obstruction is not mentioned at all in the labels.

63.     Similarly, Novo Nordisk's main promotional website for Ozempic (ozempic.com) includes a variety of information about the benefits of Ozempic relating to blood sugar, cardiovascular health, and weight loss, as well as "Important Safety Information" – however, Novo

---

[42] Bastien Gudin, et al., *Incretin-based drugs and intestinal obstruction: A pharmacovigilance study*, 75 THERAPIES 641 (published online May 11, 2020), available at
https://www.sciencedirect.com/science/article/abs/pii/S004059572030086X?via%3Dihub (visited 4/18/2024).
[43] *See* Prescribing Information for Ozempic, available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/209637s012lbl.pdf;

Nordisk does not disclose the risk of bowel obstructions within the "Important Safety Information" section of their promotional website.[44]

64.     Novo Nordisk's main promotional website for Wegovy (Wegovy.com) also includes information about the benefit of Wegovy for weight loss and cardiovascular health, as well as "Important Safety Information" – however, Novo Nordisk does not disclose the risk of bowel obstructions within the "Important Safety Information" section of the Wegovy promotional website either.[45]

65.     None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of bowel obstructions, and their sequelae.

66.     In January 2020, Novo Nordisk removed the "Instructions" portion from Section 17 "Patient Counseling Information" of the Ozempic label, which had instructed prescribers to "[a]dvise patients that the most common side effects of Ozempic are nausea, vomiting, diarrhea, abdominal pain and constipation." These instructions were present in the 2017 and 2019 labels.

67.     In its section on "Females and Males of Reproductive Potential," the Ozempic label advises female users to discontinue Ozempic at least 2 months before a planned pregnancy due to the long washout period for semaglutide. This demonstrates that Novo Nordisk knew or should have known that symptoms, such as continuous and violent vomiting, can linger long after the drugs are discontinued and shows the need to warn of bowel obstructions and their sequelae.

68.     From the date Novo Nordisk received FDA approval to market Ozempic until the present time, Novo Nordisk made, distributed, marketed, and/or sold Ozempic without adequate warning to Plaintiff's prescribing physician(s) and/or Plaintiff that Ozempic was causally associated with and/or could cause bowel obstructions and their sequelae.

---

[44] *See* Ozempic.com (visited on 10/16/23).
[45] *See* Wegovy.com (visited on 4/22/2024).

69.     Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing bowel obstructions and their sequelae. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

70.     Upon information and belief, Defendants ignored the causal association between the use of GLP-1RAs and the risk of developing bowel obstructions and their sequelae.

71.     Novo Nordisk's failure to disclose information that they possessed regarding the causal association between the use of GLP-1RAs and the risk of developing bowel obstruction, and their sequelae rendered the warnings for Ozempic and Wegovy inadequate.

72.     On information and belief, as a result of Novo Nordisk's inadequate warnings, the medical community at large, and Plaintiff's prescribing physician in particular, were not aware that Ozempic and Wegovy can cause bowel obstruction, nor were they aware that "common adverse reactions" listed on the label might be sequelae of bowel obstruction.

73.     On information and belief, had Novo Nordisk adequately warned Plaintiff's prescribing physician that Ozempic and Wegovy  are causally associated with bowel obstruction, and their sequelae, then the physician's prescribing decision would have changed by not prescribing Ozempic and Wegovy, or by monitoring Plaintiff's health for symptoms of bowel obstruction, and their sequelae and discontinuing Ozempic and Wegovy when the symptoms first started.

74.     By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from bowel obstructions and their sequelae which resulted in severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including

diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

### FIRST CAUSE OF ACTION
### (NEGLIGENT FAILURE TO WARN–
### AGAINST ALL DEFENDANTS)

75.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

76.    Under Minnesota law, Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Wegovy into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as bowel obstructions and their sequelae.

77.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed Ozempic and Wegovy that were used by Plaintiff.

78.    Ozempic and Wegovy were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

79.    At all relevant times, and at the times Ozempic and Wegovy left Defendants' control, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because they did not adequately warn of the risk of bowel obstruction, ischemic colitis,

malnutrition, and their sequelae, especially when used in the form and manner as provided by Defendants.

80.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Wegovy to consumers, including Plaintiff, without adequate warnings.

81.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Wegovy to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

82.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

83.    At all relevant times, given their increased safety risks, Ozempic and Wegovy were not fit for the ordinary purpose for which they were intended.

84.    At all relevant times, given their increased safety risks, Ozempic and Wegovy did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

85.    At all relevant times, Plaintiff was using Ozempic and Wegovy for the purposes and in a manner normally intended.

86.    The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the products created a risk of serious and dangerous injuries, including bowel obstruction, and their sequelae, as well as

other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

87.    The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including bowel obstructions, and their sequelae, as well as other severe and permanent health consequences from Ozempic and Wegovy, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their products, Ozempic and Wegovy.

88.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the increased risk of bowel obstructions, and their sequelae.

89.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae.

90.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Wegovy.

91.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

92.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all

possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the increased risk of bowel obstructions and their sequelae.

93.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Wegovy, including the increased risk of bowel obstructions and their sequelae.

94.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and her reliance upon Defendants' warnings was reasonable.

95.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and their reliance upon Defendants' warnings was reasonable.

96.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of bowel obstruction, and their sequelae causally associated with Ozempic and Wegovy, then the prescribing physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

97.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae, the prescribing physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

98.    Had Plaintiff been warned of the increased risks of bowel obstruction, and their sequelae, which are causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered from bowel obstructions and their sequelae.

99.    Had Plaintiff been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstruction, and their sequelae, Plaintiff would not have used Ozempic and Wegovy and/or suffered bowel obstruction, and their sequelae.

100.    Had Plaintiff been warned of the increased risks of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, Plaintiff would have informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Wegovy.

101.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Wegovy due to the risks of bowel obstructions and their sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Wegovy.

102.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Ozempic and Wegovy.

103.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

104.    Defendants' inadequate warnings for Ozempic and Wegovy were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

105.    Said inadequate warnings for Defendants' drugs Ozempic and Wegovy were a substantial factor in causing Plaintiff's injuries.

106.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

107.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
### (STRICT PRODUCT LIABILITY FAILURE TO WARN– AGAINST ALL DEFENDANTS)

108.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

109.    Under Minnesota law, Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Wegovy into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as bowel obstructions and their sequelae.

110.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Wegovy that were used by Plaintiff.

111.    Ozempic and Wegovy were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

112.    At all relevant times, and at the times Ozempic and Wegovy left Defendants' control, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because they did not adequately warn of the risk of bowel obstruction, and their sequelae, especially when used in the form and manner as provided by Defendants.

113.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Wegovy to consumers, including Plaintiff, without adequate warnings.

114.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Wegovy to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

115.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

116.    At all relevant times, given their increased safety risks, Ozempic and Wegovy were not fit for the ordinary purpose for which they were intended.

117.    At all relevant times, given their increased safety risks, Ozempic and Wegovy did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

118.    At all relevant times, Plaintiff was using Ozempic and Wegovy for the purposes and in a manner normally intended.

119.    The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including bowel obstructions and their sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

120.    The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including bowel obstructions and their sequelae, as well as other severe and permanent health consequences from Ozempic and Wegovy, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic and Wegovy.

121.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the increased risk of bowel obstructions and their sequelae.

122.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae.

123.    The labels for Ozempic and Wegovy were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Wegovy.

124.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

125.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the increased risk of bowel obstructions and their sequelae.

126.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae.

127.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and her reliance upon Defendants' warnings was reasonable.

128.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and their reliance upon Defendants' warnings was reasonable.

129.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, then the prescribing physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic

and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

130. Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae, the prescribing physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

131. Had Plaintiff been warned of the increased risks of bowel obstructions and their sequelae, which are causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered from bowel obstructions and their sequelae.

132. Had Plaintiff been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstruction, and their sequelae, Plaintiff would not have used Ozempic and Wegovy and/or suffered bowel obstructions and their sequelae.

133. Had Plaintiff been warned of the increased risks of bowel obstruction, and their sequelae causally associated with Ozempic and Wegovy, Plaintiff would have informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Wegovy.

134. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Wegovy due to the risks of bowel obstructions and their sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Wegovy.

135.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Wegovy.

136.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

137.    Defendants' inadequate warnings for Ozempic and Wegovy were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

138.    Said inadequate warnings for Defendants' drugs Ozempic and Wegovy were a substantial factor in causing Plaintiff's injuries.

139.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

140.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**
**(NEGLIGENCE – DESIGN DEFECT – AGAINST ALL DEFENDANTS)**

141.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

142.    Defendants are liable to Plaintiff for the injuries and damages sustained due to Defendants' negligent design and/or formulation of Ozempic and Wegovy.

143.    At all relevant times to this lawsuit, Defendants owed a duty to consumers, including Plaintiff and Plaintiff's health care providers, to assess, manage, and communicate the risks, dangers and adverse effects of Ozempic and Wegovy. Defendants' duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing Ozempic and Wegovy.

144.    Defendants negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions:

(a) Failing to use ordinary care in designing, testing, and manufacturing Ozempic and Wegovy;

(b) Failing to design Ozempic and Wegovy as to properly minimize the adverse effects to the gastrointestinal system;

(c) Failing to counteract in the design of Ozempic and Wegovy the known adverse effects on the gastrointestinal system;

(d) Designing Ozempic and Wegovy in such a way that the benefits were greatly outweighed by the risks of gastroparesis, intestinal obstructions, bowel ischemia, malnutrition, hospitalization, and death;

(e) Designing Ozempic and Wegovy without taking into consideration the proper dosage that could avoid gastroparesis, intestinal obstructions, bowel ischemia, malnutrition, hospitalization, and death;

(f) Introducing Ozempic and Wegovy to the marketplace, and continuing to market them, despite actual or constructive knowledge that these drugs were too harmful to be used by anyone.

145.   Furthermore, Ozempic and Wegovy were defective in design or formulation in that, when they left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

146.   At all reasonable times, given their lack of efficacy and increased safety risks, Ozempic and Wegovy did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff and/or her medical providers.

147.   Ozempic and Wegovy were defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, so dangerous that it should not be used, and more dangerous than other medications, treatments, or interventions which could be used as a substitute for treatment of Type 2 Diabetes or for chronic weight management.

148.   Despite Defendants' knowledge of the foreseeable risks and unreasonably dangerous nature of Ozempic and Wegovy at all times relevant, Defendants designed and brought these products to market, and continued to market these drugs, when there were safer alternatives available.

149.   As a result of Defendants' negligent and reckless design, Plaintiff was caused to suffer serious and dangerous injuries, including a bowel obstruction and its sequelae, which

resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

150.    As a result of Defendants' negligent and reckless design, Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### FOURTH CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY–
### AGAINST ALL DEFENDANTS)

151.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

152.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have acquired the Defendants who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Wegovy, which was used by Plaintiff as hereinabove described.

153.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to treat 2 diabetes, and that Ozempic and Wegovy were safe to reduce cardiovascular risk and promote weight loss, and assured them that these drugs did not carry an increased risk of gastrointestinal complications, including, but not limited to, bowel obstructions and their sequelae.

154.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic and Wegovy's labels,, website, advertisements, promotional materials, and through other statements.

155.    As a result of Defendants' express warranties, Plaintiff's prescribing physician(s) was induced to prescribe Ozempic and Wegovy to Plaintiff, and Plaintiff was induced to use Ozempic and Wegovy.

156.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and Wegovy based upon their express warranties.

157.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic and Wegovy based upon their express warranties.

158.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because of their increased risk of bowel obstructions and their sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

159.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety.

160.    The unreasonably dangerous characteristics of Ozempic and Wegovy were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

161.    The unreasonably dangerous characteristics of Ozempic and Wegovy were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

162.    At the time Ozempic left Defendants' control, Ozempic did not conform to Defendants' express warranties because Ozempic was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or to promote weight loss, in that it was causally associated with increased risks of bowel obstruction, and their sequelae.

163.    At the time Wegovy left Defendants' control, Wegovy did not conform to Defendants' express warranties because Wegovy was not safe for chronic weight management in patients with a BMI of 30 kg/m$^2$ or greater, or a BMI of 27 kg/m$^2$ and at least one weight-related comorbid condition, in that it was causally associated with increased risks of bowel obstructions and their sequelae.

164.    The express warranties made by Defendants regarding the safety of Ozempic and Wegovy were made with the intent to induce Plaintiff to use the product and/or Plaintiff' prescribing physician(s) to prescribe the product.

165.    Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Ozempic and Wegovy and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Ozempic and Wegovy.

166.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

167.    Had Defendants not made these express warranties, Plaintiff would not have used Ozempic and Wegovy and/or, upon information and belief, Plaintiff's prescribing physician(s) would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

168.    Had Plaintiff been warned of the increased risk of bowel obstruction, and their sequelae causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered from bowel obstructions and their sequelae.

169.    Had Plaintiff been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae, Plaintiff would not have used Ozempic and Wegovy and/or suffered bowel obstructions and their sequelae.

170.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

171.    Defendants' breach of express warranty was a substantial factor in causing Plaintiff's injuries.

172.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

173.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including a bowel obstruction and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

174.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Ozempic and Wegovy drugs.

175.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### FIFTH CAUSE OF ACTION
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY- AGAINST ALL DEFENDANTS)

176.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

177.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic and Wegovy drugs used by Plaintiff.

178.    Ozempic and Wegovy were expected to and did reach the usual consumers, handlers, and persons encountering said products without substantial change in the condition in which it they were produced, manufactured, sold, distributed, and marketed by the Defendants.

179.    At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Ozempic and Wegovy were of merchantable quality and safe and fit for their ordinary purpose.

180.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because of their increased risk of bowel obstructions and

their sequelae, especially when the drug was used in the form and manner as provided by Defendants.

181.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety.

182.    At the time Ozempic and Wegovy left Defendants' control, Ozempic and Wegovy did not confirm to Defendants' implied warranty and were unfit for their ordinary purpose because Defendants failed to provide adequate warnings of the drugs' causal association with increased risk of bowel obstructions and their sequelae.

183.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic for use by their patients to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk, and/or to promote weight loss.

184.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s). such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Oezmp[ic for use by their patients with type 2 diabetes, and would recommend, prescribe and/or dispense Wegovy for use by their patients for chronic weight management in patients with a BMI of 30 kg/m$^2$ or greater, or a BMI of 27 kg/m$^2$ and at least one weight-related comorbid condition.

185.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and Wegovy for their ordinary purpose.

186.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy cause unreasonably dangerous injuries, such as bowel obstructions and their sequelae,

Defendants continued to market, distribute, and/or sell Ozempic and Wegovy to consumers, including Plaintiff, without adequate warnings.

187.    The unreasonably dangerous characteristics of Ozempic and Wegovy were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

188.    The unreasonably dangerous characteristics of Ozempic and Wegovy were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

189.    Plaintiff reasonably relied on Defendants' implied warranty of merchantability relating to Ozempic and Wegovy's safety and efficacy.

190.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and Wegovy were of merchantable quality and safe and fit for their intended use.

191.    Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranty of merchantability and fitness for the ordinary use and purpose relating to Ozempic and Wegovy.

192.    Upon information and belief Plaintiff's prescribing physician(s), reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and Wegovy were of merchantable quality and safe and fit for their intended use.

193.    Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic and Wegovy and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Wegovy, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of

Ozempic and Wegovy to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

194.    Defendants herein breached the aforesaid implied warranty of merchantability because the drugs Ozempic and Wegovy were not fit for their intended purposes.

195.    Defendants' breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

196.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

197.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT-AGAINST ALL DEFENDANTS)

198.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

199.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Wegovy, which were used by Plaintiff as hereinabove described.

200.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy had not been adequately and/or sufficiently tested for safety.

201.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because of the increased risk of bowel obstructions and their sequelae, especially when the drug was used in the form and manner as provided by Defendants.

202.    Defendants had a duty to disclose material information about Ozempic and Wegovy to Plaintiff and Plaintiff's prescribing physician(s), namely that Ozempic and Wegovy are causally associated with increased risk of bowel obstructions and their sequelae, because Defendants have superior knowledge of the drugs and their dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

203.    Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

204.    Although the Ozempic and Wegovy labels list nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic and Wegovy patients, they do not mention bowel obstructions as a risk of taking Ozempic and/or Wegovy.

205.    Defendants' promotional websites for Ozempic and Wegovy similarly do not disclose that Ozempic is causally associated with increased risk of bowel obstructions.

206.    Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare

providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes or prediabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for treatment of Type 2 Diabetes.

207.    Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult patients with a BMI of 30 kg/m$^2$ or greater, or with a BMI of 27 kg/m2 or greater and at least one weight-related comorbid condition, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Wegovy for chronic weight management.

208.    Defendants knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Ozempic and Wegovy, without the awareness of the risks of serious side effects, including bowel obstruction, and their sequelae.

209.    Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and Wegovy, as set forth herein.

210.    Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Ozempic and Wegovy.

211.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, they would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate information regarding the increased risk of bowel obstruction and its

sequelae causally associated with Ozempic and Wegovy to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

212.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstruction and its sequelae, they would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

213.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Ozempic and Wegovy.

214.    Had Plaintiff been informed of the increased risks causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered bowel obstruction and its sequelae.

215.    Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

216.    As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

217.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**SEVENTH CAUSE OF ACTION**
**(FRAUDULENT MISREPRESENTATION-AGAINST ALL DEFENDANTS)**

218.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

219.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Wegovy, which were used by Plaintiff as hereinabove described.

220.    At all relevant times, Defendants knew or should have known that Ozempic and Wegovy had not been adequately and/or sufficiently tested for safety.

221.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Wegovy, including bowel obstruction, and its sequelae.

222.    At all relevant times, Defendants knew or should have known that Wegovy was not safe for chronic weight management in adults with a BMI of 30 kg/m$^2$ or greater, or 27 kg/m$^2$ or greater and one or more weight-related comorbid conditions, given its increased risk of bowel obstruction, and its sequelae.

223.    Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Wegovy.

224.    Defendants represented affirmatively and by omission on television advertisements, social media, and other online advertisements, and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of increased risks of bowel obstructions and their sequelae causally associated with using Ozempic.

225.    Defendants represented affirmatively and by omission on television advertisements, social media, and other online advertisements, and on the label of Wegovy that Wegovy  was a safe and effective drug for chronic weight management in adults with a BMI of 30 $kg/m^2$ or greater, or 27 $kg/m^2$ or greater and one or more weight-related comorbid conditions, despite being aware of increased risks of bowel obstruction, and its sequelae causally associated with using Wegovy.

226.    Defendants were aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

227.    Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for treatment of Type 2 Diabetes.

228.    Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult patients with a BMI of 30 $kg/m^2$ or greater, or 27

kg/m$^2$ or greater and one or more weight-related comorbid conditions, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Wegovy for chronic weight management.

229.    Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Wegovy, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

230.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and Wegovy to Plaintiff.

231.    Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Wegovy to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

232.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae, they would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

233.    Plaintiff had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Ozempic and Wegovy, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

234.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic and Wegovy.

235.    Had Plaintiff been told of the increased risk of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered a bowel obstruction, and its sequelae.

236.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic and Wegovy for safety risks, including bowel obstruction, and their sequelae, Plaintiff would not have used Ozempic and Wegovy and/or suffered a bowel obstruction and its sequelae.

237.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

238.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related

expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

### EIGHTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION-AGAINST ALL DEFENDANTS)

239.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

240.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Wegovy, which were used by Plaintiff as hereinabove described.

241.    At all relevant times, knew or should have known that Ozempic and Wegovy had not been adequately and/or sufficiently tested for safety.

242.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Wegovy, including bowel obstructions and their sequelae.

243.    Defendants had a duty to disclose material information about Ozempic and Wegovy to Plaintiff and Plaintiff's prescribing physician(s), including that Ozempic and Wegovy are causally associated with increased risk of bowel obstructions and their sequelae, because Defendants held a special expertise with respect to Ozempic and Wegovy, Plaintiff, as a user of Ozempic and Wegovy, had a special relationship of trust with Defendants, and Defendants knew that their statements regarding the risks causally associated with Ozempic and Wegovy would be relied on by Ozempic and Wegovy users.

244.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Wegovy, including bowel obstructions and their sequelae.

245.    Nonetheless, Defendants made material misrepresentations and omissions and/or concealments to Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Wegovy.

246.    Defendants represented affirmatively and by omission on television advertisements, social media and other online advertisements, and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of the increased risks of bowel obstructions and their sequelae causally associated with using Ozempic.

247.    Defendants represented affirmatively and by omission on television advertisements, social media, and other online advertisements, and on the label of Wegovy that Wegovy  was a safe and effective drug for chronic weight management in adults with a BMI of 30 kg/m2 or greater, or 27 kg/m2 or greater and one or more weight-related comorbid conditions, despite being aware of increased risks of bowel obstructions and their sequelae causally associated with using Wegovy.

248.    Defendants were aware or should have been aware that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community, and the general public.

249.    Defendants knew that Plaintiff and Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and Wegovy, as set forth herein.

250.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and Wegovy to Plaintiff.

251.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, they would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate information regarding the safety of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

252.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including bowel obstructions and their sequelae, they would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

253.    Plaintiff reasonably relied on the false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

254.    Had Plaintiff been told of the increased risk of bowel obstructions and their sequelae causally associated with Ozempic and Wegovy, Plaintiff would not have used Ozempic and Wegovy and/or suffered bowel obstructions and their sequelae.

255.    Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

256.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including a bowel obstruction and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

257.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

3.    Awarding Plaintiff, the costs of these proceedings; and

4.    Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury as to all issues.

Dated: July 25, 2024                    Respectfully Submitted,

*/s/ Parvin K. Aminolroaya*

Parvin K. Aminolroaya
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Phone: (212) 584-0741
Fax: (212) 584-0799
paminolroaya@seegerweiss.com
Attorney for Plaintiff